SUSAN M. CHEHARDY, Judge.
LBrandon D. Riggins appeals his convictions of armed robbery and aggravated kidnapping. We affirm.
PROCEEDINGS BELOW
On November 24, 2004, a Jefferson Parish grand jury indicted Brandon D. Rig-gins on three counts: Count 1, violation of R.S. 14:64, armed robbery; Count 2, violation of La.R.S. 14:44, aggravated kidnapping; and Count 3, violation of La.R.S. 14:52, simple arson of a vehicle. Riggins pleaded not guilty to all counts.
On May 16, 2006, the defendant underwent trial on the armed robbery and aggravated kidnapping charges. After jury selection the court recessed for lunch. The defendant, who was free on bond, failed to return to the courtroom when the recess ended. The court ordered that the trial be held without him.
The jurors were sworn in and the trial proceeded. At its conclusion, the twelve-member jury found the defendant guilty as charged of both offenses. After return of the guilty verdicts, the State dismissed Count 3, the arson charge, in open court.
On June 30, 2008 the trial court sentenced the defendant to life at hard labor for the aggravated kidnapping and to ninety-nine years at hard labor for the armed |3robbery, both without benefit of probation, parole or suspension of sentence, to be served consecutively. The defendant filed a timely appeal.
*189 FACTS
The victim, Owen Santiago, testified that on April 14, 2004, he drove home from his job at Chevy’s Restaurant to his home on Salem Street in Kenner. As he was getting out of his car at his home, four men approached him, two of them holding pistols. They grabbed him, put him in the back of his car, and told him they would kill him if he did not give them money. Santiago thought he would die because he was not cooperating with them. He later learned the man sitting on his right in the back seat was “Brandon.”
The men drove him around Jefferson Parish and into Orleans Parish, continuing to demand money, and told him to call someone for money. In New Orleans they took him to a housing project, where they got out of the car. They strip-searched Santiago and told him they would take turns beating him. They took earrings, a medallion, and a chain he was wearing. He recalled that when he still did not give them money Brandon said, “[J]ust kill that nigger, and throw him in the trash can.”
Then some passersby approached, so the assailants opened the trunk, removed the tires, and put Santiago in the trunk. They took him for a ride and returned to Me-tairie. Santiago was able to open the trunk and, as the car slowed to come to a stop, he jumped out, losing his shoes in the process. He ran to a Circle K store to call the police.
When the police responded, he took them to the places where his tires had been thrown out, where his shoes had fallen, and where his car, now burned, was recovered. They found his tires and his shoes at the locations where they had fallen.
|4The following day, Santiago viewed a photographic lineup, from which he made a positive identification of the defendant as the man who was seated to his right in the car when he was kidnapped. This photographic array was introduced into evidence as State’s Exhibit 8. Santiago was positive about this identification. He stated that if he had the opportunity to view the defendant at trial that day, he would be able to identify him.[1]
Detective Keith Forsythe of the Kenner Police Department testified he investigated the armed robbery and kidnapping of Santiago. He accompanied Santiago to the locations at which his tires and shoes had been left. Detective Forsythe said he quickly developed two suspects, one of whom was Brandon Riggins. He put together a photographic line-up that included Riggins and showed this lineup to Santiago, who identified Riggins. He asked Santiago to write his name and the date and time on the rear of the photograph Santiago had identified. Based on Santiago’s identification, Detective Forsythe obtained an arrest warrant for Riggins in April 2004, and Riggins was arrested in September 2004.
Detective Forsythe testified that Santiago had no problem identifying Riggins from the photographic lineup. Forsythe said he himself could identify Brandon Riggins if he were present in court.
Detective Jesse Johnson of the Kenner Police Department testified he went to the home of Brandon Riggins on September 29, 2004 to execute an arrest warrant. He found Riggins hiding in the closet in the rear bedroom. Johnson also testified that if Brandon Riggins were present in court, he would be able to identify him.
*190 Sergeant Robert Meyer, also with the Kenner Police Department, testified he assisted in the arrest of Brandon Riggins. He found the defendant in a closet in a | Krear bedroom. Meyer also said that if the defendant had been in court, he could identify him.
Officer Matthew Glapion of the Kenner Patrol Division testified that in the early morning hours of April 15, 2004, he saw the defendant on Airline Highway, in the company of Marcus Williams, James Converse, and an unidentified black male.[2] Minutes later he saw a fire, which turned out to be the victim’s burning car. Officer Glapion testified that if the defendant had been in court, he could have made an identification. He had no doubt the men he saw were Brandon Riggins, Williams, and Converse.
ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, the defendant asserts the evidence was insufficient to support the verdict. He does not challenge the sufficiency of the elements of the offense, but rather urges us to conclude the evidence was insufficient to convict because the State did not prove his identity beyond a reasonable doubt.
In reviewing claims challenging sufficiency of evidence or identification, an appellate court must consider “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The rational factfinder test of Jackson v. Virginia requires the State to negate any reasonable possibility of mis-identification. State v. Ware, 2006-1703, p. 7, n. 1 (La.6/29/07), 959 So.2d 459, 463, n. 1.
The defendant appeared for trial on May 16, 2006 and was present during jury selection that morning. A jury was selected and sworn in, then the court | ^recessed for lunch. When court resumed following the lunch recess, the defendant failed to return to court. Defense counsel informed the court,
I heard from my client at 1:20. I walked him down and went to get some lunch, you know, which was no problem. I went to the Westbank Expressway, I got a call back from him ... around 1:55, ... and he said he was on his way back, and would be about five minutes.
The trial judge pointed out it was then ten minutes to 3:00. The prosecutor stated the State wished to proceed with the trial; defense counsel objected, and the judge stated, “Your client voluntarily absented himself, so we’re going to go ahead and go forward.” Despite defense counsel’s objection, the jury was brought into the courtroom and the trial proceeded.[3]
The victim, Owen Santiago, testified that four people grabbed him and threw him in *191 his car. He told the jury that the man sitting next to him in the car was “Brandon.” During his testimony, the prosecutor showed the victim a photograph, which Santiago testified he had been shown by the police. He had stated during the investigation that the photograph showed one of the men who robbed him, and he reiterated that statement in court. He testified he told police he was positive of the identification and indicated his identification on the back of the photograph.
This photographic lineup, containing six photographs of similar individuals, State’s Exhibit 8, was introduced into evidence at trial. Because the photograph was placed into evidence, the jury was fully aware that the back side of the defendant’s picture bore Owen Santiago’s notation, “O.S. 4-15-04 6:28 pm.”
17As the State points out in brief, the defendant was present during jury selection; therefore, the jury had the opportunity to observe him for some time on the morning of trial. Further, during the course of the trial, the jury saw both the defendant in person and the photographic lineup, showing that he had been identified by the victim on the day he was kidnapped. The jury’s determination that the defendant was one of the assailants is based on credible witness testimony and meets the Jackson standard.
Accordingly, we find no merit to this assignment of error.
ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment, the defendant asserts the trial court abused its discretion in denying defense counsel’s motion for a recess in order to obtain the presence of a witness who had been served with a trial subpoena but failed to appear.
Prior to trial, the defense subpoenaed a number of witnesses and filed notices of alibi witnesses as well, which listed eight persons who might be called to testify that the defendant was at Mike’s Bar at 483 Veterans Highway in Kenner at the time of the alleged crimes.
During trial the court’s minute clerk reported the returns on service of the potential witnesses. Only two had been served, Lakeisha Robinson (one of the persons listed in the notices of alibi witnesses) and Randy Riggins. Thus, the defendant could have hoped for the attendance of only those two witnesses who had been served. However, neither Robinson nor Randy Riggins showed up at court for the trial.
Defense counsel requested that the court recess the trial and allow him to request issuance of an instanter subpoena for Robinson. The court denied his request and defense counsel objected, arguing he was only asking for the same | ^courtesy that is often given to the prosecution. The court advised him, “If I thought there was any chance of your client showing up I would do that.”
The defense rested its case without calling any witnesses.
On appeal the defendant asserts the denial of the motion for recess was an abuse of the court’s discretion because it denied the defendant his constitutional right to put on a defense and because the denial was in retaliation for the defendant’s failure to show up for the completion of his trial.
A recess is a temporary adjournment of a trial or hearing that occurs after the trial or hearing has commenced; in contrast, a continuance is the postponement of a scheduled trial or hearing, and a continuance may not be granted after the trial or *192 hearing has commenced. La.C.Cr.P. art. 708.
Despite the differing definitions of a continuance and a recess, a motion for a recess is governed by the same standards as a motion for a continuance. State v. Rodriguez, 02-334, p. 14 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, 117, writ denied, 03-0482 (La.5/30/03), 845 So.2d 1061, cert. denied, 540 U.S. 972, 124 S.Ct. 444, 157 L.Ed.2d 321 (2003). In general, whether to grant or deny a recess rests within the sound discretion of the trial judge, and a reviewing court will not disturb the ruling absent a clear abuse of discretion. State v. Hampton, 1998-0331, p. 9 (La.4/23/99), 750 So.2d 867, 877.
A motion for a continuance based on the absence of a witness must meet specific criteria. La.C.Cr.P. art. 709 provides the motion must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
|flThe trial court has great discretion in granting a recess; denial of a motion for a recess is not grounds for reversal, absent an abuse of that discretion and the showing of specific prejudice. State v. Stevenson, 02-0079, p. 3 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, 345. To show prejudicial error sufficient to warrant reversal, the defendant must show that the testimony the witness would have given would have been favorable to the defense and would indicate the possibility of a different result. Id.
Under La.C.Cr.P. art. 737, a court is empowered to order the attachment of a witness who fails to comply with a subpoena. In State v. George, 26,867 (La.App. 2 Cir. 4/5/95), 652 So.2d 1382, the defendant subpoenaed a co-worker who failed to appear at trial despite personal service. The defendant requested an attachment, which the trial court denied. On appeal, the second circuit observed that the witness’ testimony was not material and that the court was not assured the witness would be present when trial resumed after recess. Id., 26,867 at p. 13, 652 So.2d at 1391.
Here, in making the oral motion for a recess the defense failed to establish all the required facts. Although it was established that due diligence was used to procure Robinson’s attendance, because she had been subpoenaed, the defense failed to state the facts to which Robinson was expected to testify, or to state facts and circumstances showing a probability Robinson would be available at the time to which the trial would be deferred. The mere suggestion that Robinson may have provided the defendant with an alibi is insufficient to satisfy the requirement of that facts be offered to prove her presence at trial necessary to the defendant’s case.
The defendant failed to meet the statutory requirements for a recess. State v. Johnson, 03-620, p. 9 (La.App. 5 Cir. 10/28/03), 860 So.2d 180, 187, writ denied, 2003-3171 (La.3/19/04), 869 So.2d 849. |10Under the circumstances, we find no abuse of discretion in the trial court’s ruling on the request for a recess.
DECREE
For the foregoing reasons, the convictions and sentences are affirmed.

AFFIRMED.

EDWARDS, J., dissents in part with reasons.

. The defendant was present during voir dire but absented himself from the remainder of his trial, as discussed below in connection with the analysis of sufficiency of the evidence.

. Marcus Williams was a co-defendant in this case, but was tried separately from Brandon Riggins.

. La.C.Cr.P. art. 832 provides in pertinent part:
A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and:
(1) He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to be present during the trial....
Article 832 is applicable because trial had commenced. La.C.Cr.P. art. 761. The minute entry and transcript show that defense counsel was present throughout the trial.